**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NANG KIT YAU and WENLU WENG, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**JAMES PAI CPA PLLC, ONE ACCOUNTING CORP., and JAMES PAI, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Nang Kit Yau and Wenlu Weng (the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1. Plaintiffs are former bookkeepers and tax preparers for Defendants' tax preparation and accounting company located in Manhattan and Queens, New York. Throughout the relevant time period, Plaintiffs were non-exempt employees who routinely worked well in excess of forty (40) hours per week and were paid on a salary basis. As a result, Plaintiffs were not paid overtime premiums for hours worked in excess of forty (40) in a given workweek.

1

2.      In addition, as a result of Defendants' policy of paying a low fixed weekly salary, for most of her employment, Plaintiff Weng was not paid the New York statutory minimum wage.

3.      At no time did Defendants pay Plaintiffs spread-of-hours premiums even though Plaintiffs routinely worked in excess of ten (10) hours per day, particularly during the busy tax seasons.

4.      Plaintiffs' paystubs reflected that they were paid on a salary basis and did not reflect their total hours worked or effective hourly rate. Therefore, the wage statements that Plaintiffs received did not show an accurate accounting of all hours that they worked during each workweek.

5.      Plaintiffs bring this action to recover unpaid overtime pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid minimum wage, unpaid spread-of-hours premiums and for failure to provide wage notice and proper wage statements pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

6.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all accountants, bookkeepers, tax preparers, clerks, and employees performing similar duties, excluding Certified Public Accountants, employed by Defendants during the six (6)-year, period plus COVID-19 tolling, preceding the filing of this complaint

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

10.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

12.     <u>Plaintiff Nang Kit Yau</u> ("Yau") was, at all relevant times, an adult individual residing in Queens County, New York.

13.     Throughout the relevant time period, Plaintiff Yau performed work for Defendants at Defendants' offices located at 139 Centre St., New York, New York 10013 and 41-25 Kissena Blvd., Queens, New York 11355.

14.     <u>Plaintiff Wenlu Weng</u> ("Weng") was, at all times, an adult individual residing in Kings County, New York.

15.     Throughout the relevant time period, Plaintiff Weng performed work for Defendants at Defendants' offices located at 139 Centre St, Suite 304, New York, New York 10013 and 41-25 Kissena Blvd., Queens, New York 11355.

16.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto and is incorporated herein.

**Defendants:**

17.     <u>Defendant James Pai CPA LLC</u> is an active New York corporation with its principal place of business at 139 Centre St., New York, New York 10013 and a New York State Department of State service of process address of 190 Hester St, Suite 18, New York, New York 10013.

18.     James Pai CPA LLC was registered with the New York State Department of State on February 13, 2006.

19.     <u>Defendant One Accounting Corp.</u> (with James Pai CPA LLC, the "Corporate Defendants") is an active New York corporation with its principal place of business at 139 Centre St., New York, New York 10013 and a New York State Department of State service of process

address of 139 Centre Street, Suite 304, New York, New York 10013.

20.    One Accounting Corp. was registered with the New York State Department of State on November 10, 2016.

21.    Upon information and belief, <u>Defendant James Pai</u> ("Pai" or the "Individual Defendant" and, collectively with the Corporate Defendants, "Defendants"), also known as Yu Ching Pai, is an owner, officer and operator of the Corporate Defendants.

22.    The Individual Defendant maintained operational control over the Corporate Defendants by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

23.    The Individual Defendant participated in the day-to-day operations of the Corporate Defendants and acted intentionally in his direction and control of Plaintiff and the Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

24.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

25.    Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

26.    At all relevant times, Plaintiffs, the opt-in plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs brings their First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by James Pai CPA PLLC and/or One Accounting Corp. at any time since November 13, 2020 through the present (the "Collective Action Period") who worked as an accountant, bookkeeper, tax preparer, clerk or performed similar duties, excluding Certified Public Accountants (the "Collective Action Members").

28.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated in that they performed similar accounting, bookkeeping, and tax preparation duties, worked well in excess of forty (40) hours per week and were paid a fixed salary that did not include overtime premiums for hours worked in excess of forty (40) in a week and fell below the New York overtime exempt salary threshold. As a result of these policies, Plaintiffs and the Collective Action Members have suffered significant unpaid overtime premium payments for all hours worked in excess of forty (40) hours per week.

29.     Plaintiffs and the Collective Action Members have substantially similar job duties, in that they were all employed by Defendants to provide accounting, bookkeeping, and/or tax preparation services, worked similar schedules, and were paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

30.     Pursuant to the NYLL, Plaintiffs brings their Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by James Pai CPA PLLC and/or One Accounting Corp. at any time since March 30, 2017 through the present (the "Class Period") who worked as an accountant, bookkeeper, tax preparer, clerk or performed similar duties,

excluding Certified Public Accountants (the "Class Members").

31.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

32.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

33.    Upon information and belief, there are in excess of thirty-five (35) Class Members.

34.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiff Weng and the Class Members the correct New York statutory minimum wage for all hours worked;

d.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for all hours worked in excess of forty (40) hours per workweek;

e.    whether Defendants failed to pay Plaintiff Weng and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours and/or split shifts;

f.    whether Defendants failed to provide Plaintiffs and the Class Members with a

proper statement of wages with every wage payment as required by the NYLL;

g.   whether Defendants failed to provide Plaintiffs and the Class Members with a proper wage notice at the beginning of their employment, as required by the NYLL;

h.   whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

i.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

35.     Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were non-management non-CPA accountants, bookkeepers, and tax preparers of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid minimum wage, overtime premium pay for all hours worked over forty (40) hours in a given workweek, or spread-of-hours premium pay for days when their shifts lasted in excess of ten (10) hours, and did not receive proper wage statements or wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

36.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

37.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

38.     A class action is superior to other available methods for the fair and efficient

adjudication of this litigation.

39.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit against the corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. Plaintiffs are unaware of any other currently pending litigation concerning this controversy.

## STATEMENT OF FACTS

### Defendants' Accounting Firm

40.    Throughout the relevant time period, Defendants have owned, operated and managed James Pai CPA, an accounting firm ("James Pai CPA"). The primary location of James Pai CPA was the office located at 139 Centre St., New York, New York 10013 (the "Manhattan Office"). During the relevant time period, James Pai CPA employees also operated out of a number of offices in Queens, New York, including 41-25 Kissena Blvd., Queens, New York 11355 (the "Kissena Blvd Office").

41.    Upon information and belief, and according to public records on file with the New York Department of State, Division of Corporations, Defendants have owned, operated and managed James Pai CPA since in or around 2006.

42.    Upon information and belief, in or around July 2023, James Pai CPA merged or was acquired by Wei, Wei & Co., LLP, an accounting firm licensed to practice in New York, New Jersey, Connecticut and California.

43.    Upon information and belief, and according to Defendants' website, James Pai CPA offers accounting services, tax compliance and consulting, and international accounting services.

(http://www.jamespaicpa.com).

44.     Throughout the relevant time period, Plaintiffs received their paystubs and annual W-2 forms from One Accounting Corp.

45.     Defendant Pai hired employees, including Plaintiffs, conducted annual reviews, determined wages and raises, instructed Plaintiffs which office they were to report to on a given day, handled major client issues, set office hours, texted and called employees, and terminated employees, including Plaintiff Yau. Defendant Pai was present at Defendants' offices several times per week.

46.     Upon information and belief, Defendant Pai possesses a Certified Public Account (CPA) certification.

47.     Upon information and belief, James Pai CPA employed approximately twelve (12) employees at any given time, of whom approximately nine (9) or ten (10) were non-CPA bookkeepers/tax preparers/accountants, plus one (1) administrative employee and a small number of student workers/interns who performed administrative as well as basic bookkeeping/tax preparation work.  Upon information and belief, throughout the Class Period there was moderate turnover resulting from employees leaving their employment due to Defendants' payment of low wages and Defendants' purchase of other accounting firms, such that there are at least thirty-five (35) Class Members and likely more.

48.     In addition to their bookkeeping duties, Defendant Pai frequently required employees to perform work for his political campaign for New York City Council, for which they were typically paid fifteen dollars ($15.00) per hour.

49.     Defendants were usually busiest between February and mid-April through the annual tax filing deadline on or around April 15 and again between late August and mid-October

of each year through the extension tax filing deadline on or around October 15.

50.    Defendants were at all times well aware of their wage payment obligations and in fact routinely advised corporate clients on numerous matters relating to employment obligations, including provision of wage notice and payment of wages and tips to non-exempt employees.

51.    Defendants were at all times well aware that the salaries paid to Plaintiffs and other similarly situated employees was extremely low, given that numerous employees left their employment with Defendants due to the extremely low wages paid by Defendants.

52.    Defendants were at all times aware of the extremely long hours worked by Plaintiffs and other similarly situated employees, particularly during the two busy tax seasons, given that Defendant Pai observed employees at work in the office for long hours and communicated with employees as late as 1:00 am or 2:00 am on work matters.

53.    Defendants were at all times aware that Plaintiffs and other similarly situated employees were not CPA accountants and that they were typically recent college graduates performing primarily routine bookkeeping and tax preparation work.

54.    Defendants were at all times aware that Plaintiffs were not exempt employees, that they did not receive overtime premiums, that they were paid at or below the New York state minimum wage, and that they did not receive wage notices or proper wage statements to which they were entitled under New York law, with which Defendants were well acquainted. As such, Defendants' failure to comply with federal and New York state wage and hour law was at all times willful.

**Plaintiffs' Work for Defendants**

55.    Plaintiff Yau was employed by Defendants as a bookkeeper, tax preparer, and non-CPA accountant from in or around late September 2021 to on or about April 18, 2022 (the "Yau

Employment Period").

56.     Plaintiff Yau's duties included managing clients' books, calculating and managing sales tax and employee taxes, and preparing tax filings. Plaintiff Yau does not possess a CPA certification.

57.     Plaintiff Yau worked approximately the same number of days at the Manhattan Office and Kissena Blvd. address. He typically worked at each office as assigned by Defendant Pai. In addition, approximately one (1) day every two (2) weeks, Plaintiff Yau traveled to a client's office to perform bookkeeping work.

58.     Between the beginning of the Yau Employment Period through in or around January 2022, Plaintiff Yau typically worked five (5) days per week from between approximately 9:00 am and 10:00 am to between approximately 6:00 pm and 7:00 pm, for a total of between nine (9) and eleven (11) hours per day, and a total of between approximately forty-five (45) and fifty (50) hours per week and sometimes more. Often at the end of the day, Defendant Pai would often call Plaintiff Yau to his office to discuss his employment and other matters for between one (1) and two (2) hours.

59.     Between approximately February 2022 through the end of the Yau Employment Period, Plaintiff Yau typically worked six (6) and sometimes seven (7) days per week. During this period, he typically arrived between 8:30 am and 9:00 am and worked at the office until 9:00 pm or 10:00 pm. When he arrived home after leaving the office, he would typically work at least two (2) to three (3) more hours, sometimes as late as 1:00 am or 2:00 am. In total, during tax season, Plaintiff Yau typically worked between eleven and thirteen (11-13) hours per day, for a total of between sixty-five (65) and eighty-four (84) hours per week and sometimes more.

60.     During the busy tax season, Plaintiff Yau regularly received calls and text messages

from Defendant Pai between 9:30 pm and 2:00 am, asking Yau to call him to discuss a client's tax return or other work issue.

61.     Throughout the Yau Employment Period, Plaintiff Yau was paid his wages on a bi-weekly basis, which he received via direct deposit accompanied by a paystub that showed his salary payment. Plaintiff Yau was paid based upon an annual salary of $32,000 for a gross bi-weekly payment of approximately $1,333.33.

62.     In addition to his accounting work, Plaintiff Yau was also required to perform additional work for Defendant Pai.  On or about November 1, 2021, Yau and a small number of other employees were told by Defendant Pai to come in during the weekend and move office furniture; although they worked for several hours they were not paid for this work. On several occasions, Yau and other employees were required to work on Defendant Pai's political campaign; for this work they were paid fifteen dollars ($15.00) per hour.

63.     At no time during the Plaintiff Yau Employment Period did Plaintiff Yau receive a written wage notice setting forth his hourly or salary rate(s), any deductions or credits claimed by Defendants, his regular payday, employer contact information, and other information required by NYLL § 195(1)(a).

64.     Plaintiff Yau was aware that, during his employment and shortly thereafter, several employees left Defendants' accounting firm due to the extremely low wages they received for their work.

65.     Plaintiff Yau did not possess a CPA, and his employment with Defendants was his first accounting job out of undergraduate university.

66.     Plaintiff Weng was employed by Defendants as a bookkeeper, tax preparer, and non-CPA accountant from in or around April 16, 2018 to in or around late January 2022 (the

"Weng Employment Period").

67.    In or around December 17, 2017, Plaintiff Weng was hired by C&L Accounting. Upon information and belief, a portion of C&L Accounting's client portfolio was purchased or otherwise obtained by Defendants, and Plaintiff Weng was transitioned to employment with Defendants at that time.

68.    Plaintiff Weng's duties included organizing clients' books, calculating and managing sales tax and employee taxes, and preparing tax filings. Plaintiff Weng does not possess a CPA certification.

69.    Plaintiff Weng worked most days at the Manhattan office. Approximately once per week, she was told by Defendant Pai to work at one of the Queens offices, usually 41-25 Kissena Blvd.

70.    During tax seasons, *i.e.*, between on or around February 1 and on or about April 15 and between late August and October 15 of each year, Plaintiff Weng typically worked six (6) and sometimes seven (7) days per week, as late as 11:00 pm or 12:00 midnight, at least ten (10) hours per day and often significantly more, for an average of approximately seventy (70) hours per week.

71.    During the remainder of the year, Plaintiff Weng typically worked five (5) days per week, approximately nine (9) hours per day, for a total of approximately forty-five (45) hours per week. Plaintiff Weng typically worked approximately one (1) hour beyond the core office hours, either arriving early or staying late.

72.    Throughout the Weng Employment Period, Plaintiff Weng was paid her wages on a bi-monthly basis, which she received via direct deposit accompanied by a paystub that showed her salary payment. During the period of her transition from C&L Accounting to James Pai CPA, she was paid by paycheck.

73.     At the beginning of the Weng Employment Period, Plaintiff Weng was paid based upon an annual salary of approximately $25,200.00 and received a bi-monthly gross payment of $1,050.00. Beginning on or about January 15, 2019, Plaintiff Weng's annual salary was increased to $28,980.00, for a bi-monthly gross payment of $1,207.50. Beginning on or about September 14, 2021 and through the end of the Weng Employment Period, Plaintiff Weng's annual salary was increased to $32,007.12, for a bi-monthly gross payment of $1,333.63.

74.     In 2021, Plaintiff Weng received $30,611.58 in gross pay. In 2022, she received bi-monthly gross payment of $1,388.63.

75.     At no time during the Plaintiff Weng Employment Period did Plaintiff Weng receive a wage notice setting forth her hourly or salary rate(s), any deductions or credits claimed by Defendants, her regular payday, employer contact information, and other information required by NYLL § 195(1)(a).

76.     Plaintiff Weng did not possess a CPA, and her job with C&L Accounting, which transitioned to Defendants after only a few months, was her first accounting job out of undergraduate university.

**Defendants' Unlawful Policies**

77.     Plaintiffs and the Collective and Class Members were all paid pursuant to the same corporate policies of Defendants, specifically with respect to Defendants' practices of paying their non-CPA accountant/bookkeeper/tax preparer employees flat weekly salary rates which did not include legally required overtime premiums Plaintiffs and the Collective and Class Members were entitled to receive and did not meet the New York overtime salary threshold in effect at any given time.

78.     At no time did Defendants enter into a clear and explicit written agreement with

Plaintiffs or the Collective and Class Members that Plaintiffs were non-exempt employees, that Defendants would pay them a salary to reflect their fluctuating workweeks, and that Defendants would accordingly pay overtime premiums at one-half (.5) times their effective hourly rate.

79.     Throughout the relevant time period, Plaintiffs and the Collective and Class Members typically worked well in excess of forty (40) hours per week; during the biannual tax seasons, they typically worked sixty (60) or more hours per week. Throughout the relevant time period, Plaintiffs and the Collective and Class Members regularly worked in excess of ten (10) hours per day, particularly during the biannual tax seasons.

80.     Plaintiffs and the Collective and Class Members did not possess CPA certifications and primarily performed routine bookkeeping and tax preparation duties with close supervision and oversight of their tasks. Throughout the relevant time period, Plaintiffs primarily performed routine sales, employment, and income tax calculations and filled out state tax forms.

81.     At no time did Defendants track the hours worked by Plaintiffs or the Collective and Class Members, except that for a period beginning in or around March 2020 Defendants began requiring employees to track their hours billed per client.

82.     As a result of Defendants' consistent and ongoing wage payment policies, which were common as to all Plaintiffs and Collective and Class Members, Plaintiffs and Collective and Class Members were deprived of overtime premiums to which they were legally entitled. Accordingly, Defendants failed to pay non-exempt Plaintiffs and Collective and Class Members overtime premiums consisting of one and one-half (1.5) times their effective hourly rate for all hours worked in excess of forty (40) hours per week.

83.     As a result of the low salary paid to Plaintiffs and Collective and Class Members, Plaintiff Weng and many Collective and Class Members were paid an effective hourly rate that

fell below the minimum wage for a portion or all of their employment with Defendants. Accordingly, Defendants failed to pay non-exempt Plaintiff Weng and Collective and Class Members the appropriate New York state minimum wage for a large employer located in New York City for all hours worked.

84.    As a result of the low salary paid to Plaintiffs and Collective and Class Members, Plaintiff Weng and many Collective and Class Members were paid less than minimum wage yet did not receive spread-of-hours premiums on days to which they were legally entitled. Accordingly, Defendants failed to pay non-exempt Plaintiff Weng and Collective and Class Members spread-of-hours premiums consisting of one (1) extra hour's pay at minimum wage on days when employees worked in excess of ten (10) hours per day.

85.    Since Defendants did not pay Plaintiffs and the Collective and Class Members for their actual time worked each week, at no time did Plaintiffs' or the Collective and Class Members' paystubs reflect their actual hours worked. Thus, Defendants have failed to provide Plaintiffs and the Collective and Class Members with proper statement of wages containing the dates of work covered by their wage payments; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the complete and total number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

86.    Defendants did not provide Plaintiffs or the Collective and Class Members with wage notices, at hiring or otherwise, in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime

rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

87.    Plaintiffs and the Collective and Class Members suffered concrete injury arising from Defendants' failure to provide accurate wage statements and wage notices, particularly in light of Defendants' failure to track employees' hours worked. Defendants' failure to provide Plaintiffs and Class Members with wage notices and wage statements allowed Defendants to hide the extent of their wrongdoing such that Plaintiffs and Class Members were unable to ascertain their true hourly rates and their true hours worked in order to confirm whether they were being paid correctly in accordance with federal and state wage and hour law.

88.    The concealing of this information by Defendants has resulted in not only an informational injury but in Plaintiffs and Class Members being injured by being underpaid throughout their respective employment periods.

89.    By depriving Plaintiffs and the Collective and Class Members of time tracking, wage notices and wage statements, Defendants effectively deprived Plaintiffs and Collective and Class Members of relevant information to determine whether they were underpaid and whether they were even paid the minimum wage, particularly during the busy tax season.

90.    Defendants' failure to provide wage notices and wage statements, as well as time tracking, is particularly egregious here, where Defendants were well aware of their employment obligations yet failed to provide even basic information to Plaintiffs and the Collective and Class Members regarding their hours worked and effective hourly rates that would have permitted Plaintiffs to evaluate the fairness and adequacy of their pay.

91.    Upon information and belief, throughout the relevant time period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

92.    Plaintiffs have spoken with other non-CPA accountants, bookkeepers, and tax preparers employed by Defendants during the relevant time period and are aware that Defendants' policies of failing to track hours worked and paying low salaries to employees who performed similar non-CPA routine accounting, bookkeeping and tax preparation work resulted in such employees not receiving overtime premiums and frequently being paid less than the minimum wage and not receiving spread of hours premiums. Plaintiffs are likewise aware that Defendants' policies of providing paystubs that do not comply with the wage statement requirements of NYLL § 195(3) and failing to provide wage notices in accordance with NYLL § 195(1)(a) applied to all non-CPA accountants, bookkeepers and tax preparers.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

93.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.    Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by improperly failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

95.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and

215(a)(2).

96.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

97.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action.

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

98.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     Defendants violated the NYLL overtime rights of the Plaintiffs and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

100.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff Weng and the Class Members)**

101.    Plaintiff Weng, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    Defendants willfully violated Plaintiff Weng's and the Class Members' rights by failing to pay the correct New York statutory minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

103.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiff Weng and the Class Members to suffer loss of wages and interest thereon. Plaintiff Weng and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

104.    Defendants' failure to pay minimum wage caused Plaintiff Weng and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wage, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiff Weng and the Class Members)**

105.    Plaintiff Weng, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

106.     Defendants willfully violated Plaintiff Weng's and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

107.     Defendants' failure to pay spread-of-hours compensation caused Plaintiff Weng and the Class Members to suffer loss of wages and interest thereon.  Plaintiff Weng and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

108.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109.     Defendants have willfully failed to supply Plaintiffs and the Class Members a proper wage statement as required by NYLL § 195(3).

110.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL § 198(1-d), reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

111.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

112.    Defendants have willfully failed to supply Plaintiffs and Class Members notice when they was hired and/or when his wage rate(s) changed, as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and Class Members as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

113.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) for each day that the violations occurred, up to a maximum of five thousand dollars ($5,000.00), as provided for by NYLL§ 198 (1-d), reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 *et seq.* on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay overtime compensation, pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation, pursuant to the FLSA and the NYLL and supporting regulations;

h.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage and spread-of-hours premiums, pursuant to the NYLL and supporting regulations;

i.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wage and spread-of-hours premiums, pursuant to the NYLL and supporting regulations;

j.  An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

k.  An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1-b);

l.  An award of prejudgment and post-judgment interest;

m.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       November 13, 2023

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure James Pai CPA PLLC and/or its owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

_____          _____
Signature                                                         Printed Name

                                                                    Nang Kit Yau
0B67D1320EBB45B...

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure James Pai CPA PLLC and/or its owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

*Wenlu Weng*

_____          Wenlu Weng
Signature                                  _____
                                           Printed Name