

**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

June 10, 2024

Taylor B. Graham, Esq.
Graham@PeltonGraham.com

**VIA ECF**

Hon. Jennifer L. Rochon
Daniel Patrick Moynihan United States Courthouse
Southern District of New York
500 Pearl St.
New York, New York 10007

    Re:    *Nang Kit Yau, et ano. v. James Pai CPA PLLC, et al.*
              Case No. 1:23-cv-09997 (JLR)
              <u>MOTION FOR APPROVAL OF FLSA SETTLEMENT</u>

Dear Judge Rochon:

       This office represents plaintiffs Nang Kit Yau and Wenlu Weng (the "Plaintiffs") with respect to their claims for unpaid minimum wage, overtime premiums and spread of hours, and for failure to provide wage notices and accurate wage statements against James Pai CPA PLLC, One Accounting Corp., and James Pai (the "Defendants")[1]. We write, jointly with counsel for Defendant, pursuant to your Honor's Individual Practices and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). As detailed below, the Parties respectfully submit that the Settlement Agreement and Wage and Hour Release (the "Agreement") (attached as **Exhibit A** to the Declaration of Taylor B. Graham, Esq.) constitutes a fair and reasonable compromise of this matter which warrants court approval.

**I.**    **Procedural History**

       Plaintiffs commenced this Action on November 13, 2023 by filing a Collective and Class Action Complaint against the Defendants. (Dkt. No. 1 ["Compl."]). On November 22, 2023, the Court issued a Mediation Referral Order automatically referring this matter to early mediation and ordering the exchange of certain documents and information. (Dkt. No. 10). On January 26, 2024, Defendants filed their Answer to the Complaint, denying all material allegations. (Dkt. No. 17).

       In advance of the first mediation, held on February 9, 2024, Plaintiffs produced paystubs, W-2 tax forms, and text messages with Defendant James Pai, along with initial damages calculations. (Graham Decl. ¶¶ 7, 8). Defendants exchanged text messages, payroll and tax records, and timesheets. (*Id.* ¶ 7). The Parties made some progress in negotiations over several hours at the February 9, 2024 mediation and scheduled a follow-up mediation for May 23, 2024. (*Id.* ¶ 8).

---

[1] Each Plaintiff and Defendant is a "Party" and they are referred to collectively herein as the "Parties."

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 220 Montgomery Street, Suite 2100, San Francisco, CA 94104  Tel. 415-437-9100

www.PeltonGraham.com

Honorable Judge Jennifer L. Rochon
Motion for Approval of Settlement Agreement
Page 2 of 8

Following the unsuccessful February 9, 2024 mediation, the parties exchanged written discovery requests and responses. (*Id.* ¶ 9). Plaintiffs produced additional materials including bank account summaries, text and call logs and telephone call recordings, and records showing MTA purchases. (*Id.*). Defendants produced an attendance log and additional pay materials. (*Id.*).

On May 23, 2024, the Parties participated in a second mediation. (Graham Decl. ¶ 10). While an agreement was not reached after hours of discussions, the Parties requested a mediator's proposal. Mr. Bunshaft provided his proposal later that day, and the Parties separately accepted the proposal and reached an agreement in principle on May 24, 2024. (*Id.*). After further communications regarding settlement terms, the Parties agreed to a final Settlement Agreement and Wage and Hour Release. (*Id.* ¶ 11, Ex. A).

## II. Plaintiffs' Claims and Defendants' Defenses

As detailed in the Complaint, Plaintiffs are former bookkeepers and tax preparers for Defendants' accounting firm. Plaintiffs allege that, as junior bookkeepers and tax preparers, they should have been classified as non-exempt employees and paid minimum wage, overtime premiums and spread of hours premiums. Plaintiffs also allege that they were not provided with wage notices or proper wage statements. Plaintiffs allege that for approximately two (2) or three (3) months before the biannual tax filings deadlines (*i.e.*, April 15 and October 15), they worked extremely long hours, between approximately sixty-five (65) and eighty-four (84) hours per week and sometimes more. During the remainder of the year, Plaintiffs allege that they worked between forty-five (45) and fifty (50) hours per week. Plaintiffs further allege that, given their hours worked and salary they were paid, they were not paid overtime premiums to which they were entitled; Plaintiff Weng further alleges that her pay rate frequently fell below the minimum wage and that she did not receive spread of hours premiums to which she was entitled.

The Parties dispute numerous issues of fact concerning Plaintiffs' allegations and Defendants' defenses. Primarily, Defendants have disputed the number of hours worked by Plaintiffs, based upon timesheets and an attendance log as well as text messages sent by Plaintiffs when they arrived late or left early from the office. Defendants have also asserted that Defendants' accounting firm should be classified as a "small employer," such that any unpaid wages should be calculated using the New York City "small employer" minimum wage rate.

## III. The *Wolinsky* Factors

To determine whether a settlement is fair and reasonable, Courts in this circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations omitted); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing the *Wolinsky* factors). These factors are discussed in turn.

      **A.**      **Plaintiffs' Range of Possible Recovery**

In evaluating a plaintiff's range of possible recovery, courts analyze both the maximum possible recovery and the "factual and legal litigation risks Plaintiffs faces." *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 316, 322-23 (S.D.N.Y. Jan. 5, 2021).

Plaintiffs' damages analysis was calculated using Plaintiffs' allegations in the Complaint and were based on Plaintiffs' salary records and Plaintiffs' best estimates as to their typical hours worked during their employment period, supported by text messages and emails. Plaintiffs' damages computations, which Plaintiffs have relied on throughout the mediation process, is attached as **Exhibit B** to the Graham Declaration and sets forth an estimate of damages for the allegations as set forth in Plaintiffs' Complaint. Plaintiffs calculated unpaid minimum wage, overtime premiums and spread of hours premiums, as well as damages for Defendants' failure to provide proper wage statements and wage notices, calculated according to the rate and statutory maximum set forth at NYLL § 198(1-d). Plaintiffs also calculated liquidated damages arising under the FLSA and NYLL, consisting of 100% on the unpaid wage damages. Finally, Plaintiffs calculated statutory interest accrued throughout the NYLL period by multiplying the unpaid wages by the New York statutory rate of nine percent (9%) per annum. *See* CPLR § 5004.

In total, Plaintiffs' damages analysis calculated $192,811.59 in total damages as of February 9, 2024, the date of the first mediation, which amount includes: $7,166.26 in unpaid minimum wage, $64,629.47 in unpaid overtime wages, $4,800.64 in unpaid spread-of-hours premiums, $76,596.38 in liquidated damages, $20,000.00 in statutory wage statement and wage notice damages, and $19,618.83 in pre-judgement interest. (Graham Decl. ¶ 14; Ex. B). The amount of the Settlement (i.e., $58,500.00) is equal to approximately 76.4% of Plaintiffs' best-case scenario of unpaid wage damages, and approximately 30.3% of Plaintiffs' total maximum damages. After taking into account attorneys' fees and costs, the amount paid directly to Plaintiffs from the Settlement (i.e., $38,533.33), represents approximately 50.3% of their "actual" unpaid wage damages and approximately 20% of their total calculated damages.

At the May mediation, Defendants produced a damages calculation using the small employer minimum wage rate, which provided for $61,160.42 in unpaid overtime, with no minimum wage or spread of hours damages, $20,000.00 in wage statement and wage notice damages, $61,160.42 in total liquidated damages, and $14,421.96 in prejudgment interest, for a total of $156,742.80. (Graham Decl. ¶ 15). The total settlement amount represents 95.7% of Plaintiffs' unpaid wages and 37.3% of Plaintiffs' maximum damages according to Defendants' calculations.

While Plaintiffs believe that the strength of their claims outweighs the defenses raised and records proffered by Defendants and that further discovery would support their claims, Plaintiffs

also recognize the time and further expense that will result from continuing to litigate, which Defendants ultimately may not be able to bear, particularly given that Defendant James Pai sold the accounting firm prior to the commencement of the litigation. Furthermore, Plaintiffs recognize the potential risks involved and the difficulties of establishing that they worked the maximum number of hours alleged in light of Defendants' testimony to the contrary, which could result in Plaintiffs recovering less or nothing at all if we were to proceed to trial. Plaintiffs also recognize that Defendants may be able to establish that Defendants were eligible to pay the New York City small employer rate for at least a portion of the relevant time period.

In light of this range of possible recovery, the real risks of further litigation including Defendants' inability to pay, further discovery, motion practice, and trial, Plaintiffs prefer to settle under the terms of this Settlement Agreement, which the Parties believe is within a reasonable range of settlement that the Court should approve. *See, e.g., Zorn-Hill v. A2B Taxi LLC*, Nos. 19-cv-1058, 18-cv-11165 (KMK), 2020 U.S. Dist. LEXIS 170608, 2020 WL 5578357, at *4-5 (S.D.N.Y. Sept. 17, 2020) (approving settlement amount equal to 12.5% of the plaintiffs' best-case scenario recovery); *Cronk*, 538 F. Supp. 3d at 323 (approving settlement representing approximately 13% of potential recovery, citing cases where settlements providing 7%-20% of maximum possible recover were approved).

### B.   Avoiding Anticipated Burdens and Expenses & Litigation Risks

As noted above, Defendants categorically deny any of the allegations presented in the Complaint, and the Parties have various disputes as to the facts of Plaintiffs' claims, Defendants' liability, and the accuracy and completeness of Defendants' records. Thus, there is a clear dispute between the Parties with respect to the merits of the claims. Such a dispute would most likely require extensive additional discovery, motion practice including dispositive motion briefing, and likely trial to decide.

Given the substantial time and expense that would be needed to resolve these disputed issues, Plaintiffs prefer to settle now for a guaranteed amount under the terms of the settlement. Accordingly, the Parties believe that the settlement amount of $58,500.00 is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages, as well as the risks associated with proceeding with litigation.

### C.   Arm's-Length Bargaining & Possibility of Fraud or Collusion

Throughout the litigation, the settlement negotiations between counsel for the Parties have always been at arm's length. Indeed, the settlement was only reached after two lengthy mediations and the exchange of written discovery. The negotiations were at all times adversarial and conducted between counsel experienced in wage and hour litigation. There is nothing to suggest that the terms of the Settlement Agreement were reached as a result of fraud or collusion. All parties were actively involved throughout the negotiations process to attempt resolution.

### IV. Settlement Terms

The parties' Settlement Agreement provides for a total amount of $58,500.00 (the "Settlement Amount"), inclusive of attorney's fees and costs. Of the Settlement Amount, $19,966.67 (consisting of $700.00 in expenses and $19,266.67 in attorneys' fees) is payable to Plaintiffs' counsel. The remaining $38,533.33 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the Parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The Parties also did not include a confidentiality provision and have specifically included language in the Settlement Agreement making it clear that nothing in the Settlement Agreement precludes the Parties from truthfully communicating their experiences concerning the Action or Settlement.

The Settlement Agreement includes a mutual non-disparagement provision. The Parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-cv-8187, 2015 WL 7871036, 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) First, the non-disparagement provision is mutual and binds both Parties. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2016 WL 659110, 2016 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 WL 5581568, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between plaintiff's rights under the FLSA, and defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123, 2016 WL 3440554, 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* 176 F. Supp. 3d 340, 345 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-

disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588, 2016 WL927183, 2016 U.S. Dist. LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15-cv-5680, 2016 WL 3455383, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the Settlement Agreement and to obtain reasonable attorneys' fees in the event that they prevail.

### V.    Plaintiffs' Attorneys' Fees and Expenses

As set forth in the Declaration of Taylor B. Graham, Esq., to date, Plaintiffs' counsel has spent more than 101 hours in prosecuting and settling this matter, resulting in a lodestar of $31,460.44 (Graham Decl. ¶ 23; Ex. C). Plaintiffs' counsel has spent $700.00 in actual litigation costs, consisting of filing the complaint and service of process. (Ex. D). The portion of the Settlement Amount that Plaintiffs seek as attorneys' fees (i.e., $19,966.67) represents one-third (1/3) of the Settlement Amount, after subtracting the actual litigation costs, which is less than the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreement.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern and Eastern Districts of New York. In fact, similar rates have been approved in connection with wage and hour judgments in both the Southern and Eastern Districts of New York. *See Campos v. BKUK 3 Corp.*, No. 18-cv-4036, 2021 WL 3540243, 2021 U.S. Dist. LEXIS 151528, at *34-37 (S.D.N.Y. Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates); *Guinea v. Garrido Food Corp*., No. 19-CV-5860, 2020 WL 136643, 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *see also Canales v. Norwich Serv. Station, Inc.*, No. 20-CV-4759, 2021 WL 5759727, 2021 U.S. Dist. LEXIS 231980, at *11-12 (E.D.N.Y. Dec. 3, 2021) (approving an attorney billing rate of $500.00, and a $275.00 paralegal hourly rate).

For the purposes of this settlement, Defendants take no position with respect to Plaintiffs' counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

Accordingly, and particularly as the lodestar exceeds the attorneys' fee award sought, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

## VI.   The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 WL 593500, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 WL 185628, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 WL 724155, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 WL 67235, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreach" by the employer as evidenced by the lengthy, arm's length negotiations throughout the litigation during which the discussions were led by each Parties' respective counsel. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks and obstacles of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including attendance records maintained by Defendants and disputes regarding the appropriate minimum wage rate. Rather than move forward with lengthy and costly litigation, including additional discovery, dispositive motion practice and trial, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation, and the parties have in good faith focused their efforts to reach this resolution.

*   *   *   *   *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both Parties. The Parties believe that the settlement is completely fair, reasonable and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter.

Honorable Judge Jennifer L. Rochon
Motion for Approval of Settlement Agreement
Page 8 of 8

Respectfully submitted,

| | |
|---|---|
| By: */s Taylor B. Graham* | By: */s Ziyi Gao* |
| Taylor B. Graham, Esq. | Ziyi Gao, Esq. |
| Brent E. Pelton, Esq. | Jian Hang, Esq. |
| **PELTON GRAHAM LLC** | **Hang & Associates, PLLC** |
| 111 Broadway, Suite 1503 | 136-20 38th Avenue, Suite 10G |
| New York, New York 10006 | Flushing, New York 11354 |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

Enclosure

cc:    All counsel (via ECF)

www.PeltonGraham.com